**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, *et al.*, <br><br> Defendants. | Civil Action No. 22-cv-3350 (TSC) |

## <u>MEMORANDUM OPINION</u>

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") sued the Department of Homeland Security ("DHS") and its Secretary, the U.S. Secret Service and its Director, the Department of the Army and its Secretary, the Department of Defense ("DoD") and its Secretary, and the National Archives and Records Administration ("NARA") and its Archivist ("Defendants"). Plaintiff alleges that Defendants violated the Administrative Procedure Act ("APA") by failing to initiate mandatory enforcement actions to recover records that were unlawfully deleted under the Federal Records Act ("FRA"). Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiff lacks Article III standing and failed to state a claim.

Having considered the record and the briefing, the court will GRANT Defendants' Motion.

## I.      BACKGROUND

### A.      Legal Background

The FRA provides for "the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999).  It requires agencies to "establish and maintain an active, continuing program" to "manage[]" agency records, 44 U.S.C. § 3102, as well as "safeguard[] against the removal or loss of records," *id.* § 3105.  In the event "of any actual, impending, or threatened unlawful removal . . . or other destruction of records," the agency "shall notify the Archivist," and "with the assistance of the Archivist shall initiate action through the Attorney General for the recovery of records" that it "knows or has reason to believe have been unlawfully removed."  *Id.* § 3106(a).  The Archivist shall also initiate action through the Attorney General if it learns of any unlawful destruction or removal of records and the agency fails to initiate an action "within a reasonable period of time."  *Id.* § 2905(a).  The records covered by the FRA include those "made or received by a Federal agency . . . under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation . . . as evidence of . . . activities of the United States Government or because of the informational value of data in them."  *Id.* § 3301(a)(1)(A).

### B.      Factual and Procedural Background

Plaintiff, a nonprofit organization, filed this suit on November 2, 2022, alleging that "text messages of Trump administration officials at DHS, the Secret Service, DoD, and the Army" were either "improperly deleted after being requested as part of investigations into the January 6, 2021 attack on the United States Capitol" or are "unlawfully outside of government custody."  Compl., ECF No. 1 ¶¶ 1, 8.  Plaintiff claims that "Defendants have known for months of the records' unlawful deletion or alienation, yet they have failed to initiate an FRA enforcement action" despite the FRA's enforcement provisions being "mandatory."  *Id.* ¶ 2.  The missing

records, moreover, "may contain critical evidence concerning the January 6 attack on the Capitol," including "evidence of criminal misconduct." *Id.* ¶ 3.

Plaintiff alleges four APA violations, *id.* ¶¶ 75–109, and seeks declaratory and injunctive relief ordering Defendants to initiate enforcement actions under the FRA, *id.* ¶ 5.  Defendants moved to dismiss, arguing that Plaintiff lacks Article III standing and failed to state a claim. Mot. to Dismiss, ECF No. 9; *see* Mem. in Supp. of Mot. to Dismiss, ECF No. 9-1 ("Motion").

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss any claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  Article III standing is a fundamental aspect of subject matter jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) ("*Lujan II*").  In assessing standing, the court must "accept all of the factual allegations in the complaint as true," *Jerome Stevens Pharms. Inc. v. FDA*, 402 F.3d 1249, 1250 (D.C. Cir. 2005) (citation omitted), and construe the complaint "in the light most favorable to" the non-moving party, *Navab-Safavi v. Glassman*, 637 F.3d 311, 382 (D.C. Cir. 2011).  Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the "factual allegations in the complaint . . . will bear closer scrutiny [than those allegations would] in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (quotation marks and citation omitted).

### B.     Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  In other words, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The court presumes the truth of the complaint's factual allegations as well under Rule 12(b)(6), *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), but need not "accept as true 'a legal conclusion couched as a factual allegation,'" nor "inferences [that] are unsupported by the facts set out in the complaint," *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (citations omitted).

Although APA claims are typically resolved on motions for summary judgment, the court may resolve an APA claim on a motion to dismiss if the plaintiff's claim "can be resolved with nothing more than the statute and its legislative history." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 266 (D.C. Cir. 2001).  If the plaintiff challenges the "rule-making process" or the agency's application of a "rule in specific cases," however, resolution on a motion to dismiss is improper.  *Id.* at 267.

### III.    ARTICLE III STANDING

Defendants first argue that Plaintiff lacks Article III standing to bring its claims related to agency-issued phones and its claim that NARA violated its own regulations by failing to initiate an enforcement action.

### A.    Elements of Standing

It is an "essential and unchanging part of the case-or-controversy requirement" that a plaintiff must establish Article III standing.  *Lujan II*, 504 U.S. at 560.  To survive a motion to dismiss, a plaintiff must plead (i) an "injury in fact," that is (ii) "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court," and that (iii) is "likely" to be "redressed by a favorable decision."  *Id.* at 560–

61 (formatting modified).  Moreover, the plaintiff must plausibly allege standing as to each claim, not just one.  *See Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

      *i.*     *Injury in fact*

      An organizational plaintiff can demonstrate injury either by showing that the challenged action harms its organizational interests (organizational standing), or by showing that at least one of its members has individual standing (associational standing).  Here, Plaintiff seeks organizational standing.

      An entity may establish organizational standing if it alleges "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—[that] constitutes far more than simply a setback to the organization's abstract social interests."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  In *Havens Realty*, the Supreme Court found the plaintiff had alleged injury in fact by claiming that the defendant's "steering practices have perceptibly impaired [the plaintiff's] ability to provide counseling and referral services for low- and moderate-income homeseekers."  *Id.*  An entity's "abstract interest in a problem," by contrast, "is insufficient to establish standing, 'no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem.'"  *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).  For example, "frustration of an organization's objectives" is such an "abstract concern."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted).  The D.C. Circuit "establishes two important limitations" on organizational standing: the organization (1) "must show 'a direct conflict between the defendant's conduct and the organization's mission,'" and (2) "may not 'manufacture the injury necessary to maintain a suit from its expenditure of resources on that

very suit.'" *Am. Soc'y for Prevention of Cruelty to Animals*, 659 F.3d at 25 (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990)).

"Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). That is because "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Id.* (citation omitted). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan II*, 504 U.S. at 561 (citation omitted).

If a statute requires that records be made public upon request, a plaintiff has an injury in fact if the agency's alleged statutory violation causes a delay in access. *FEC v. Akins*, 524 U.S. 11, 21 (1998). A request for the records, however, must be imminent. Courts in this district have concluded that plaintiff's alleged injury was too "speculative and remote" where it was based on a potential future FOIA request, *Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 106 (D.D.C. 2007), but was not too speculative when plaintiff had already filed a FOIA request seeking the records, *Citizens for Resp. & Ethics in Wash. v. Exec. Off. of the President*, 587 F. Supp. 2d 48, 61 (D.D.C. 2008).

   *ii.*   *Traceability*

The causation or traceability element requires that the defendant bears some responsibility for the plaintiff's injury. *See Lujan II*, 504 U.S. at 560–61. For example, in *Reed v. Goertz*, plaintiff's injury—denial of access to evidence for DNA testing—was traceable to

defendant's conduct because defendant was the state prosecutor who denied plaintiff access to the evidence.  143 S. Ct. 955, 960 (2023).  By contrast, in *California v. Texas*, in which plaintiffs challenged the constitutionality of the minimum essential coverage provision of the Affordable Care Act, the Court held that individual plaintiffs' injury—making payments necessary to carry the minimum essential coverage— was not traceable to the statute because the statute had "no means of enforcement" if plaintiffs failed to comply.  141 S. Ct. 2104, 2113–14 (2021).

 *iii.*  *Redressability*

 To allege redressability, a plaintiff must plausibly allege that it is "substantially likely" they will "obtain relief that directly redresses the injury suffered."  *Reed*, 143 S. Ct. at 960 (citation omitted); *see Barker v. Conroy*, 921 F.3d 1118, 1124 (D.C. Cir. 2019) (plausibility standard).  "The key word is 'likely.'"  *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Lujan II*, 504 U.S. at 561).  For example, in *Reed*, the Supreme Court concluded that plaintiff had standing because the state prosecutor was "substantially likely" to "abide by . . . a court order" holding that his "justification" for withholding the evidence violated due process.  143 S. Ct. at 960.  By contrast, in *Lujan II*, the Court held that plaintiff could not show redressability because the "only" way to redress plaintiff's injury was for individual agencies to terminate funding of certain activities abroad until they consulted on environmental impacts, but the agencies at issue were not parties to the suit, and "any relief the [court] could have provided in this suit . . . was not likely to" result in redress.  504 U.S. at 568–71.

 In the records context, the D.C. Circuit has held that an APA suit seeking an FRA enforcement action was not moot because such an action might "shake loose a few more" of the emails plaintiff sought, and therefore the government had not shown the missing records' "fatal loss."  *Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 955 (D.C. Cir. 2016).  Applying this holding in

the standing context, a court in this district concluded that there was a "substantial likelihood that Plaintiff's requested relief would yield access to at least some of the emails at issue," because "action by the Attorney General has yielded fruit before, even when the emails at issue had been deleted." *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 209 (D.D.C. 2018) (referencing *Kerry*).

When analyzing standing, the court assumes the plaintiff "would succeed on the merits of his claims," *Barker*, 921 F.3d at 1124, and grants the "plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citation omitted). "When conjecture is necessary," however, "redressability is lacking." *West*, 845 F.3d at 1237. Put another way, "unadorned speculation will not suffice to invoke the federal judicial power." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 44 (1976).

## B.    Scope of Relevant Evidence

In considering "whether to grant a motion to dismiss for lack of jurisdiction," the "court may consider materials outside the pleadings." *Jerome Stevens Pharms., Inc.*, 402 F.3d at 1253; *see Lujan II*, 504 U.S. at 564–67 (discussing standing affidavits at the motion to dismiss stage). Indeed, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). For example, a court in this district considered government declarations in granting a motion to dismiss on standing grounds, holding that the government established "fatal loss" of the records by showing that the "missing emails cannot be obtained through [the sender] himself, his devices, or his service provider." *Cause of Action Inst. v. Pompeo*, 319 F. Supp. 3d 230, 236 (D.D.C. 2018).

To be sure, "when considering a motion to dismiss for lack of subject matter jurisdiction, a court cannot 'rely on conclusory or hearsay statements contained in the affidavits.'" *Welborn v. IRS*, 218 F. Supp. 3d 64, 80 (D.D.C. 2016) (citation omitted); *see* Mem. in Opp'n to Mot. to Dismiss, ECF No. 10 at 20–22 ("Opp'n").  But "evidence in testimony by agency declarants based upon information gleaned from personal familiarity with agency practices or from information relayed by other agency personnel" is "routinely considered," *Ecological Rts. Found. v. EPA*, 541 F. Supp. 3d 34, 50 (D.D.C. 2021) (citing cases), because agency officials are "competent to testify to [their] own observations upon review of the documents," "the agency's procedures," and their "personal experiences as an agent," *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981).

Plaintiff argues that jurisdictional questions are not properly decided on a motion to dismiss if they "depend[] on information outside the pleadings" and are "inextricably intertwined with the merits of the case."  Opp'n at 19–20 (quoting *Am. Oversight v. U.S. Dep't of Veterans Affs.*, 498 F. Supp. 3d 145, 155 (D.D.C. 2020)).  But Plaintiff overstates the relevance of *American Oversight*.  The Supreme Court has required that Article III standing come first, as to proceed without deciding it "carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  *American Oversight*, however, addressed a "prudential" ripeness challenge—not Article III standing.  498 F. Supp. 3d at 155.  Thus, the court did not run afoul the Supreme Court's guidance to decide Article III standing first by choosing to "defer" the ripeness decision until after discovery.  *Id.* at 157.  Courts may not do the same in the Article III standing context without "offend[ing] fundamental principles of separation of powers."  *Steel Co.*, 523 U.S. at 94.

C.     **Plaintiff's Standing**

  i. *Claims relating to agency-issued phones*

  Defendant only argues that Plaintiff's claims relating to agency-issued phones are not

redressable—not that Plaintiff lacks an injury in fact or that its injury is not traceable to

Defendants' conduct.  *See* Motion at 5–8 (contesting only redressability).  The court, however,

has "an independent obligation to ensure [its] jurisdiction."  *Muthana v. Pompeo*, 985 F.3d 893,

901 (D.C. Cir. 2021).

  Plaintiff alleges an injury in fact as an organization.  It is a nonprofit organization

"committed to protecting the rights of citizens to be informed about the activities of government

officials and agencies and to ensuring integrity in government."  Compl. ¶ 8.  To that end,

Plaintiff "routinely files FOIA requests," giving it "a strong operational interest in Defendants'

compliance with their recordkeeping obligations under the FRA."  *Id.* ¶¶ 8–9.  Among those

requests are "several pending FOIA requests" with Defendants "seeking records (including but

not limited to text messages) concerning the January 6 attack on the Capitol and related events."

*Id.* ¶ 10.  As in *Akins*, Defendants' alleged violations of the APA have caused a delay in access to

records Plaintiff claims it is entitled to receive through FOIA.  524 U.S. at 21; *accord Exec. Off.*

*of the President*, 587 F. Supp. 2d at 61.  And, like in *Havens Realty*, this delay in access has

caused a "concrete and demonstrable" drain to Plaintiff's organizational activities by impeding

its ability to inform citizens about the government's response to the January 6 attack on the U.S.

Capitol.  455 U.S. at 379 (defendant's practices impaired plaintiff's "ability to provide

counseling and referral services for low- and moderate-income homeseekers").

  Plaintiff's injury is also traceable to Defendants' alleged statutory violations.  In

Plaintiff's view, an FRA enforcement action is necessary to avoid "[p]ermanent loss" of the

records it seeks, and such a loss "would directly impede CREW's ability to fulfill its mission and its informational rights under FOIA."  Compl. ¶ 11.  Moreover, Defendants are obligated to initiate an enforcement action when they have reason to believe records have been unlawfully destroyed, 44 U.S.C. §§ 2905(a), 3106(a), and Plaintiff alleges Defendants knew of the records' unlawful destruction, Compl. ¶¶ 79–80, 88–89, 97–98, 105–06.  Thus, viewing the allegations as true, Defendants bear at least some responsibility for Plaintiff's injury.  *See Lujan II*, 504 U.S. at 560–61; *Reed*, 143 S. Ct. at 160.

Redressability poses a closer question.  Defendant argues that Plaintiffs' claims "are not redressable, because they concern potential federal records that are either already in agency custody or, if they ever existed, are no longer recoverable."  Motion at 6–8.  In support of this argument, Defendant provided declarations from NARA, the Secret Service, the DHS, the DoD, and the Army.  These declarations show that it is not substantially likely that any text messages would be recovered from the agency-issued phones if the Attorney General initiated an enforcement action.

First, the DoD's agency-issued "phones were wiped."  Brewer Decl., ECF No. 9-3 ¶ 14.  "DoD determined that when these mobile devices were turned in by the DoD officials" they were "reprovisioned by DoD IT technicians in accordance with the IT policy at the time," meaning that they were reset to factory condition and no longer "contain[ed] recoverable text message content."  Greenwell Decl., ECF No. 9-5 ¶¶ 7–8.  Second, the Army phones "were reprovisioned before any information could be recovered from them," which means they were "irreversibl[y] wip[ed]."  Brewer Decl.¶ 18; *accord* DeAgostino Decl., ECF No. 9-6 ¶ 2 (explaining that the military officials' phones were reprovisioned).  Third, the Secret Service phones are "not recoverable due to a phone migration."  Brewer Decl. ¶ 23.  And finally, the DHS officials'

phones are also unrecoverable.  Two officials—Wolf and Cuccinelli—had their phones "retained . . . for several months" once they were returned but these phones were then wiped and "subsequently disposed of" by a DHS contractor.  Granger Decl., ECF No. 9-4 ¶ 12 (Wolf); *accord id.* ¶ 14 (Cuccinelli).  And DHS official Alles received a new agency-issued phone in February 2022, and "performed a factory reset" on his former iPhone.  *Id.* ¶ 18.

The court may consider these declarations because each is by an agency official and is based on the official's personal knowledge of agency practices and information relayed by other agency officials or the agency's contractors.  *See Londrigan*, 670 F.2d at 1174; *Ecological Rts. Found.*, 541 F. Supp. 3d at 50.  And the declarations foreclose the possibility that an enforcement action might "shake loose a few" of the text messages Plaintiff seeks.  *See Kerry*, 844 F.3d at 955.  It is not "substantially likely" than an enforcement action would recover the unrecoverable; thus, Plaintiff's claims are not redressable as they relate to the agency-issued phones.

Plaintiff disagrees.  It initially notes that "[c]ourts have deemed similar allegations" to those in its Complaint "sufficient to plead redressability."  Opp'n at 17 (citing *Exec. Off. of the President*, 587 F. Supp. 2d at 62; *Citizens for Ethics & Resp. in Wash. v. SEC*, 858 F. Supp. 2d 51, 60–61 (D.D.C. 2012) ("*SEC I*")).  In *Executive Office of the President*, the court held that plaintiffs pleaded redressability because they sought "precisely the relief outlined in FRA and upheld by the D.C. Circuit: an order requiring the Archivist and agency head to ask the Attorney General to initiate legal action."  587 F. Supp. 2d at 62.  Similarly, in *SEC I*, the court found redressability because "the FRA authorizes the relief Plaintiff requests"—"an order requiring the Defendants to ask the Attorney General to initiate legal action."  858 F. Supp. 2d at 61 (emphasis omitted).  Importantly, however, in those cases there were no declarations explaining that the text messages are unrecoverable because the phones have been wiped and backups were not

stored.  *See Exec. Off. of the President*, 587 F. Supp. 2d at 54–55, 62; *SEC I*, 858 F. Supp. 2d at

55–56, 60–61.  Consequently, those cases are inapplicable.

Plaintiff also argues that Defendants' declarations do not show that the records are truly

unrecoverable.  Opp'n at 22–26.  First, Plaintiff contends that "[d]eeming an FRA case non-

justiciable merely because the agency and Archivist 'took *some* action to recover the missing

records'" would be nonsensical.  *Id.* at 22–23.  But the significance of Defendants' declarations

is not that they demonstrate the agency "took some action."  Rather, the declarations demonstrate

that the agency-issued phones have been wiped and, pursuant to agency policy, copies were not

kept.  *Supra* at 11–12; *see* Brewer Decl. ¶¶ 14, 18, 23; Greenwell Decl. ¶¶ 7–8; DeAgostino

Decl. ¶ 2; Granger Decl. ¶¶ 12, 14, 18.

Second, Plaintiff argues that the court should not consider the statements related to the

mobile phone providers in the declarations.  Opp'n at 21.  The court need not decide whether

these statements may be considered, however, because no major cellular carrier retains text

messages for years following reset.  *See* Retention Periods of Major Cellular Service Providers,

U.S. Dep't of Justice, Computer Crime and Intellectual Property Section (March 2011)

(explaining that, among major cellular carriers, only Verizon retains text message content, and it

only does so for three to five days); *see also Federico v. Lincoln Mil. Hous., LLC*, No. 2:12-cv-

80, 2014 WL 7447937, at *8 (E.D. Va. Dec. 31, 2014) (explaining that, among major cellular

carriers, "only Verizon retains text message content" and it only does so "for three to five days").

Thus, there is no basis to assume that the mobile phone providers have retained text messages

from more than three years ago.

Third, Plaintiff calls the declarations "conclusory" and argues they do not show that the

agencies tried to "salvage the data from the phones."  Opp'n at 23–24.  But the redressability

question is not whether there is any possibility that the records could be salvaged; it is whether record recovery is "substantially likely" to occur as the result of the enforcement action.  And it is not "substantially likely" that an enforcement action would result in recovering records from phones that have been wiped and reset to factory settings.

Fourth, Plaintiff casts doubt on the veracity of some of the statements in the declarations. For example, one declaration states that DHS retained Signal messages from its former officials' temporary devices.  Granger Decl. ¶ 20.  But Plaintiff insists that Signal's auto-delete function— allowing users to set their messages to delete after a set number of hours or days—"casts substantial doubt on that representation," Opp'n at 24–25, because messages could have been automatically deleted before Defendants retained them.  Plaintiff's argument is unpersuasive. Signal's auto-delete function is not turned on by default.  Signal Support, *Set and manage disappearing messages*, support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages (last visited March 19, 2024) (explaining how to set disappearing messages in the Signal app).  And nothing in the declaration indicates that the officials elected to auto-delete their messages.  Moreover, if Plaintiff had serious concerns about the credibility of the government's declarants, it could have sought jurisdictional discovery.  *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.").  The court finds the declarants credible.

Finally, Plaintiff argues that "the Attorney General's coercive power" could result in recovery of the records, citing *Tillerson*, in which a court in this district acknowledged that "action by the Attorney General has yielded fruit before," in *Kerry*, "even when the records at issue had been deleted."  Opp'n at 25–26 (quoting *Tillerson*, 285 F. Supp. 3d at 208–09).  But

*Kerry* addressed lost emails that had been stored externally, *see Tillerson*, 285 F. Supp. 3d at

206–07, and the declarations in *Tillerson* did not show that defendants failed to search for any

external storage of the emails, *id.* at 208.  Neither case addressed text messages and phones that

had been wiped.  And nothing in the record or in any other case indicates that text messages may

be recovered from cell phones that have been wiped and restored to factory settings.  Indeed, as

Defendants point out, "if phone manufacturers could not credibly represent that performing a

factory reset . . . reliably places a user's data beyond reach, then sensitive personal, commercial,

or governmental information would be at risk any time a user sells, trades in, or gives away an

old phone, and any time an organization assigns a previously used phone to a new user."  Reply

in Supp. of Mot. to Dismiss, ECF No. 11 at 7–8.

      In sum, Plaintiffs lack standing to claim that Defendants violated the APA by failing to

initiate an FRA enforcement action to recover messages deleted from agency-issued phones.

      *ii.*      *Count II against NARA*

      Defendants also argue that Plaintiff lacks standing to bring "its claim that NARA violated

its regulations by not requiring DHS to issue a report within 30 days" because it lacks a

"'concrete,' 'legally protected interest' in how NARA enforces its regulations," and "failed to

request any relief that even plausibly relates to this claim."  Motion at 13–14 (quoting *Lujan II*,

504 U.S. at 560).  Plaintiff, however, contends that it "has not pleaded a freestanding APA claim

based on NARA's violations of its regulations."  Opp'n at 26–27.

      Taking Plaintiff's concession, the court will construe the Complaint not to press an

independent claim against NARA for violating its own regulations.  *See* Compl. ¶ 93.  Rather,

Count II alleges only that "DHS unlawfully deleted text messages," DHS and NARA were aware

of the deletions, and DHS and NARA's failure "to initiate an FRA enforcement action through the Attorney General" violated 5 U.S.C. § 706(1), (2)(A). *Id.* ¶¶ 86–92.

Thus, construing Count II to only claim that Defendants violated the APA by failing to initiate an FRA enforcement action to recover messages deleted from agency-issued phones, the court finds that Plaintiff lacks standing over Count II in its entirety. *Supra* Section III.C.i.

    *iii.*    *Count I relating to the personal phone*

Defendants do not challenge Plaintiff's standing to claim that they violated the APA by failing to initiate an FRA enforcement action to recover alienated federal records from former DHS official Cuccinelli's personal phone. *See* Opp'n at 12. That concession is sound.

Plaintiff has an injury in fact that is fairly traceable to Defendants' alleged conduct for the same reasons explained *supra* at 10–11. Plaintiff also shows redressability for this claim. Brewer's declaration states that "DHS was able to recover iMessages from" Cuccinelli's iCloud account, Brewer Decl. ¶ 27, and Granger's declaration states that Cuccinelli "has not consciously . . . deleted old text messages" and "would be willing to search for pertinent text messages if provided search parameters," Granger Decl. ¶ 16. Thus, an enforcement action might "shake loose a few" text messages. *Kerry*, 844 F.3d at 955; *accord Tillerson*, 285 F. Supp. 3d at 209.

In sum, Plaintiff has standing to bring only Count I as it pertains to the text messages sent to or from Cuccinelli's personal phone. The remainder of Plaintiff's claims will be dismissed for lack of subject matter jurisdiction.

## IV.    THE MERITS

Turning to the merits of Count I, Defendants contend that Plaintiff fails to state a claim for relief under 5 U.S.C. § 706(1) because the FRA does not require them to initiate an enforcement action when records are presumed to be destroyed, and under § 706(2)(A) because their inaction under the FRA is not a final agency action. The court may rule on both issues at

the motion to dismiss stage because doing so does not require reference to the administrative

record.  *See Am. Bankers Ass'n*, 271 F.3d at 266–27.

A.      **Scope of the APA**

        i.       *Mandatory agency action under § 706(1)*

        As the Supreme Court has held, "a claim under § 706(1) can proceed only where a

plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted).  "Required"

means "required"—the statute must contain a "specific, unequivocal command" with respect to

the discrete action the plaintiff seeks to compel.  *Id.* at 63.  "The recovery provisions of the

Federal Records Act fit that bill because they 'leave the agency head and Archivist no discretion

to determine which cases to pursue.'"  *Kerry*, 844 F.3d at 954 (citation omitted).  The FRA

requires that, in the event "of any actual, impending, or threatened unlawful removal . . . or other

destruction of records," the agency "notify the Archivist," and "with the assistance of the

Archivist shall initiate action through the Attorney General for the recovery of records" that it

"knows or has reason to believe have been unlawfully removed."  44 U.S.C. § 3106(a); *accord*

*id.* § 2905(a) (requiring the Archivist to initiate action for "recovery of records" and "for other

redress provided by law").  Thus, the FRA requires the agency to notify the Archivist of any

removal or destruction of records, but mandates initiation of an enforcement action upon only

removal of records.

        In *Armstrong v. Bush*, 924 F.2d 282, 291 (D.C. Cir. 1991) ("*Armstrong I*"), the D.C.

Circuit held that although "the FRA precludes judicial review and records creation and

management decisions are committed to agency discretion by law," private litigants may seek

"APA review of [agency] recordkeeping guidelines and instructions, but only limited APA

review of claims that records are being destroyed in violation of such guidelines." In so holding, the Court explained: "if the agency head or Archivist does nothing while an agency official destroys or removes records . . . private litigants may bring suit to require the agency head and Archivist to fulfill their statutory duty to . . . ask the Attorney General to initiate legal action." *Id.* at 295. It also "emphasize[d] the mandatory statutory language" in the FRA "because it indicates that the agency head and Archivist are required to take action to prevent the unlawful destruction or removal of records and, if they do not, private litigants may sue under the APA to require them to do so." *Id.* at 296 n.12. *Armstrong I*, however, addressed FRA remedies for preserving records—not FRA remedies for past destruction of records. Indeed, the D.C. Circuit has not addressed the question presented in this case, and only one court in this district has done so. *See Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 145–52 (D.D.C. 2013) ("*SEC II*"). In *SEC II*, the court held that, although *Armstrong I* "contain[s] language helpful to CREW," that language was not "sufficient to overcome the plain meaning of § 3106," *id.* at 147, which requires only notification to the Archivist upon discovering unlawful destruction of records, 44 U.S.C. § 3106(a). Although this issue presents a close question, the court finds *SEC II* persuasive. *See infra* Section IV.B.i.

     ii.     *Final agency action under § 706(2)(A)*

Only "final agency action" is reviewable under § 706(2)(A) of the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) ("*Lujan I*"). "As a general matter, two conditions must be satisfied for agency action to be 'final'": (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature" and (2) "the action must be one by which 'rights or obligations have been determined' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations

omitted).  "An agency action may be final even if the agency's position is 'subject to change' in the future" so long as it "announces a binding change in the law."  *Nat'l Env't Dev. Ass'ns Clean Air Project v. EPA*, 752 F.3d 999, 1006–07 (D.C. Cir. 2014) (quoting *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 319 (D.C. Cir. 2011)).

Applying this framework, in *Franklin v. Massachusetts*, the Supreme Court held that the Secretary of Commerce's report of the census to the President was a "tentative recommendation" rather than "final agency action" because it was "subject to correction" by the President and "carrie[d] no direct consequences."  505 U.S. 788, 797–98 (1992).  Similarly, in *Dalton v. Specter*, the Court held that the Secretary of Defense's report recommending a military base closure "serve[d] 'more like a tentative recommendation than a final and binding determination'" because the only action that "directly affect[s]" the bases is "taken by the President, when he submits his certification of approval to Congress."  511 U.S. 462, 469 (1994).

## B.    Count I

### i.    *Plaintiff fails to allege a violation of mandatory agency action under § 706(1)*

Plaintiff fails to state a claim for relief under § 706(1) because it seeks an order requiring agencies to initiate an enforcement action for destruction of records, which the FRA does not require.  Section 3106(a) requires agencies to "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records," but then provides that "the Archivist shall initiate action through the Attorney General for the recovery of records the head of the Federal agency knows or has reason to believe have been unlawfully removed from that agency."  Thus, the FRA expressly requires notification of "destruction" of records, along with "removal, defacing, alternation, corruption,

deletion, [and] erasure," but provides for an enforcement action only for "removal" of records. *Supra* Section IV.A.i; *see SEC II*, 916 F. Supp. 2d at 146–47.

The FRA's inclusion of "removal" alongside a list, including destruction, in the first clause, and then inclusion of only "removal" in the second clause is significant for two reasons. *See SEC II*, 916 F. Supp. 2d at 146–47. First, the rule against superfluity tells courts that "removal" has a distinct meaning from "defacing, alteration, corruption, deletion, erasure, or other destruction of records." *See, e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'" (citation omitted)). And second, the *expressio unius* canon instructs that, by including "removal" but not "destruction" in the second clause, Congress meant to exclude "destruction" from the enforcement duty. *See, e.g.*, *Bittner v. United States*, 143 S. Ct. 713, 720 (2023) ("When Congress includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning."). Combining these precepts, the language of § 3106(a) is plain, so "the sole function of the courts . . . is to enforce it according to its terms" so long as "the disposition required by the text is not absurd," *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 6 (2000) (citation omitted). Consequently, § 3106(a) does not mandate an enforcement action when records are destroyed; only when records are removed.

Plaintiff disagrees with this reading of § 3106(a). First, it contends that Defendants' position is inconsistent with the D.C. Circuit's decision in *Armstrong I*. Opp'n at 27–28. But although *Armstrong I* "contain[s] language helpful to CREW," that language was dicta, not holding. *SEC II*, 916 F. Supp. 2d at 147. Plaintiff in *Armstrong I* claimed that the agency's "recordkeeping guidelines and directives" were "inadequate" and that agency staff members

were "destroying records in contravention of [agency] recordkeeping guidelines and directives."
924 F.2d at 291.  Thus, *Armstrong I* did not involve an enforcement action for prior destruction
of records, but rather one for ongoing destruction of records.  Consequently, in deciding that
plaintiff's claim was reviewable, the court did not hold that the agency had a mandatory duty to
initiate an enforcement action when records had previously been destroyed.  *Accord SEC II*, 916
F. Supp. 2d at 147–48 (*Armstrong I* did not speak "to the issue of whether § 3106 imposes a
restoration duty regarding already-destroyed documents").

Plaintiff also notes that the D.C. Circuit and courts in this district have characterized
*Armstrong I*'s holding as authorizing suits arising from FRA obligations regarding "destruction
of records."  Opp'n at 28–29 (citing *Kerry*, 844 F.3d at 954; *Armstrong v. Exec. Off. of the
President,* 1 F.3d 1274, 1279 (D.C. Cir. 1993) ("*Armstrong II*"); *Exec. Off. of the President*, 587
F. Supp. 2d at 56–57; *Competitive Enter. Inst. v. EPA*, 67 F. Supp. 3d 23, 33–34 (D.D.C. 2014);
*Citizens for Ethics & Resp. in Wash. v. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 111
(D.D.C. 2007)).  But, as Plaintiff concedes, those characterizations are also not holdings, nor do
they apply *Armstrong I* to a discovery of destroyed records under § 3106(a).  *See id.*

Second, Plaintiff argues that Defendants' reading of the FRA is inconsistent with its
purpose to "safeguard against both the unlawful 'destruction' of records and the 'removal' of
records from agency custody."  *Id.* at 30–31.  But Plaintiff acknowledges that the FRA's
declaration of purpose states only that the FRA seeks to "assure efficient and effective records
management," including through "complete documentation of its policies."  44 U.S.C. § 2902(1).
Plaintiff claims that this "complete documentation" goal "is achieved through" requiring
safeguards against destruction of records, Opp'n at 30–31, but provides no basis for this
contention.  Plaintiff also cites legislative history emphasizing Congress's concern with

"incidents of removal or destruction of records," *id.* at 34, but relying on legislative history is improper when the text is unambiguous, *see, e.g.*, *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) ("Even those of us who sometimes consult legislative history will never allow it to be used to 'muddy' the meaning of 'clear statutory language.'" (citation omitted)).

Third, Plaintiff argues that the phrase "other redress" in § 3106(b) and § 2905(a) means that § 3106(a) and § 2905(a) mandate an enforcement action when records are destroyed. Opp'n at 31–33. In Plaintiff's view, "other redress" "is a catch-all for the various 'unlawful actions' other than removal listed in Section 2905(a) . . . and Section 3106(a)," including "record destruction." *Id.* at 33. That argument is unpersuasive. For one thing, "other redress provided by law" in § 2905(a), which provides that the Archivist shall initiate action "for the recovery of records unlawfully removed and for other redress provided by law," is more naturally read to refer to redress other than "recovery" for "records unlawfully removed"—such as damages or prosecution—not redress for other unlawful activities. *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 543–44 (2015) (explaining the *noscitur a sociis* canon, which provides for construing catch-all phrases in the context of the words it "appear[s] in a list with" (citation omitted)). For another, § 3106(a) does not require agencies to initiate an enforcement action for "other redress"—only the Archivist has such an obligation under § 2905(a). Congress' choice to oblige the Archivist to initiate enforcement action for "recovery and other redress" and agencies to do so for "recovery" alone indicates that § 3106(a) does not require enforcement actions for "other redress" at all. *See Bittner*, 143 S. Ct. at 720.

Finally, Plaintiff cites NARA's directive explaining the FRA's obligations, which provides that "the Archivist has the responsibility to request that the Attorney General initiate action for recovery or other redress" "within a reasonable time of being notified of the unlawful

destruction or removal" of records.  Opp'n at 34–35 (quoting National Archives and Records

Administration, *NARA 1463, Unauthorized Destruction or Removal of Records in the Legal or*

*Physical Custody of Federal Agencies* § 1463.4(a)(2) (2016), https://tinyurl.com/zhbakcju.

NARA's interpretation of the FRA is not entitled to any deference, however, because § 3106 is

unambiguous.  *See Chevron USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984)

(courts may defer to agency interpretation of statute only when "the statute is silent or

ambiguous" and the agency's interpretation is "reasonable"); *see also* Br. for Pet'r's. at i,

*Relentless, Inc. v. Dep't of Com.*, No. 22-1219 (U.S.) (presenting the question of whether the

Supreme Court "should overrule or clarify the *Chevron* doctrine").  Nor does NARA give any

explanation for its interpretation that could inform the court's analysis of § 3106(a) or § 2905(a).

Plaintiff therefore fails to state a claim for relief in Count I under § 706(1) of the APA for

Defendants' failure to initiate an enforcement action arising from the unlawful destruction of text

messages on Cuccinelli's personal cell phone.

> ii.    *Plaintiff does not challenge final agency action under § 706(2)(A)*

In its opposition, Plaintiff did not respond to the issue of whether it challenges final

agency action subject to review under § 706(2)(A).  In fact, § 706(2)(A) is not mentioned once in

the portion of Plaintiff's brief addressing Federal Rule of Civil Procedure 12(b)(6).  "The rule in

this circuit is clear that when a plaintiff fails to respond to an issue raised in a dispositive motion,

the Court may treat that argument as conceded."  *Singh v. District of Columbia*, 55 F. Supp. 3d

55, 66 (D.D.C. 2014).  Thus, Plaintiff has conceded that it does not challenge final agency action

reviewable under § 706(2)(A).

That concession is sound.  NARA's failure to initiate an enforcement action through the

Attorney General did not mark "a binding change in the law," *Nat. Res. Def. Council*, 643 F.3d

at 319, or give rise to "legal consequences," *Bennett*, 520 U.S. at 178 (citation omitted).

Accordingly, the court will dismiss Count I in its entirety.

### V.    CONCLUSION

For the foregoing reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 9.  An Order will accompany this Memorandum Opinion.

Date: March 19, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge